UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS C. GEORGALIS, | ) | Case No.: 1:18 CV 256 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| FACEBOOK, INC., | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant | ) | AND ORDER |

## I. INTRODUCTION

Pending before the court is the motion of Plaintiff Nicholas Georgalis ("Plaintiff" or "Georgalis") for reconsideration of the court's Memorandum Opinion and Order[1] (ECF No. 15) and Judgement Entry (ECF No. 16), granting Defendant Facebook, Inc.'s ("Defendant" or "Facebook") motion to dismiss this action (Mot., ECF No. 17). Defendant opposed the Motion (Opp'n, ECF No. 18), and Plaintiff filed a reply (Reply, ECF No. 19). For the reasons that follow, Plaintiff's Motion is denied.

## II. BACKGROUND

The background of this action is detailed in the Memorandum Opinion and Order from which Plaintiff seeks reconsideration. Briefly, Plaintiff claimed in the Complaint that he is a Facebook user

---

[1] *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955 (N.D. Ohio 2018).

and Defendant deleted comments he posted and his "likes" of other's Facebook posts, allegedly violating his constitutional rights under the First and Fifth Amendments to the United States Constitution (Compl., ECF No. 1 at 1-2). Plaintiff also claimed that 47 U.S.C.§ 230(c)(2)(A), which shields Interactive Computer Service Providers ("ICSP") such as Facebook from liability for restricting material that the ICSP considers to be, among other things, obscene, excessively violent, harassing, or otherwise objectionable (whether or not such material is constitutionally protected), is unconstitutional (*id*. at 2).

Defendant moved to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), which Plaintiff opposed. After analysis, the court granted Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Plaintiff now asks this court to reconsider that ruling in light of the United States Supreme Court's decision in *S. Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018).

### III. LAW AND ANALYSIS

#### A. Federal Rule of Civil Procedure 59(e)

The Federal Rules of Civil Procedure do not provide for a motion for reconsideration. But Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment, and the court may treat a motion to reconsider as a motion to alter or amend a judgment pursuant to that rule. *Howard v. U. S.*, 533 F.3d 472, 475 (6th Cir. 2008); *Smith v. Hudson*, 600 F.2d 60, 62-63 (6th Cir. 1979) ("[A] motion which asks a court to vacate and reconsider, or even reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment.").

Motions for reconsideration are "extraordinary in nature" and, because "they run contrary to notions of finality and repose," are granted "very sparingly." *Grossman v. Royal Manor Mgmt., Inc.*, No. 5:13MC8, 2013 WL 978261, at *1 (N.D. Ohio Mar. 12, 2013) (quoting *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)). The moving party bears the burden of establishing that this extraordinary remedy should be granted. *See id*. Rule 59(e) "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (citation omitted).

A Rule 59(e) motion to amend or alter judgment may be granted for the following reasons: (1) to correct a clear error or law; (2) to address newly discovered evidence; (3) to address an intervening change in controlling law; or (4) to prevent manifest injustice. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 808-09 (N.D. Ohio 2010) (citing *Gencorp, Inc. v. Am. Int'l Underwriters Co.,* 178 F.3d 804, 834 (6th Cir. 1999)). Although Plaintiff does not expressly specify the basis for his motion, his reliance on *Wayfair* implies that he is seeking reconsideration to address an intervening change in controlling law.

### B. Discussion

#### *1. Personal jurisdiction–Fed. R. Civ. P. 12(b)(2)*

Plaintiff seeks reconsideration of the court's ruling granting Defendant's motion to dismiss for lack of personal jurisdiction. In granting Defendant's motion, the court found Plaintiff failed to establish that Defendant had sufficient minimum contacts with the State of Ohio–general or

specific–to satisfy the Due Process component of personal jurisdiction analysis.[2] In particular, the court found that Facebook's maintenance of a website accessible to Ohio residents was insufficient to establish general jurisdiction, and Plaintiff's argument that Defendant sells advertising directed to Ohio residents was insufficient to establish specific jurisdiction because the alleged marketing is unrelated to his claim that Facebook violated his constitutional rights by deleting content from his Facebook account. *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 960-61 (N.D. Ohio 2018) (citations omitted).

### 2. *S. Dakota v. Wayfair*

Plaintiff's argument for reconsideration is based upon *S. Dakota v. Wayfair, Inc*. In *Wayfair*, South Dakota enacted a law requiring out-of-state sellers to collect and remit sales taxes "as if the sellers had a physical presence in the State" if, on an annual basis: (1) those sellers delivered more than $100,000 of goods and services into the state; or (2) engaged in 200 or more separate transactions for the delivery of goods or services in the state. *Wayfair*, 138 S. Ct. at 2089.

Before *Wayfair*, the Supreme Court held that an out-of-state seller's sales tax liability depended upon whether the seller had a physical presence in the State, and the mere shipment of goods into the consumer's State did not satisfy that physical presence requirement. *Id*. at 2087-88 (citing *Nat'l Bellas Hess, Inc. v. Dep't of Revenue of Ill.,* 386 U.S. 753 (1967) and *Quill Corp. v. N.*

---

[2] Because Ohio's requirements for personal jurisdiction are not coterminous with federal constitutional limits, Plaintiff must show that, in addition to satisfying Ohio's jurisdictional requirements, this court's exercise of jurisdiction over Defendant comports with due process. *Sherwin-Williams Co. v. Advanced Collision Ctr. of Mobile, Inc.*, No. 1:16 CV 2355, 2017 WL 3034383, at *2 (N.D. Ohio July 18, 2017) (citing *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012)). In order to satisfy the due process component, Plaintiff must show that Defendant has sufficient minimum contacts with Ohio so that the court's exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient "minimum contacts" that satisfy the due process requirement may be general or specific.

*Dakota,* 504 U.S. 298 (1992)). In reconsidering that precedent in *Wayfair*, the question before the Supreme Court was whether tax liability can be imposed on an out-of-state seller, and the answer to that question turned "on a proper interpretation of the Commerce Clause." *Id*. at 2087 (citation omitted). For the purpose of imposing sales tax liability under the Commerce Clause, the Supreme Court overruled precedent and held that an out-of-state seller's physical presence is not necessary to create a substantial nexus with a state. *Id.* at 2092 (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)).

### 3. *Plaintiff's motion for reconsideration*

Plaintiff points out that, in *Wayfair*, "the physical presence of a business doing substantial business in a state using an interstate common carrier was not necessary to impose a legal liability for collecting a sales tax on in-state transactions with the out-of-state business." Mot. at 1. He maintains that, for the same reasons discussed by *Wayfair* in the context of the Commerce Clause, "technological progress has rendered Civil Rule 12(b)(2) anachronistic" and "the application of Civil Rule 12(b)(2) in the instant case is unconstitutional as it imposes a burden on commerce of which civil suits are an integral part." *Id*. at 3. According to Plaintiff, "[*Wayfair*] redefines the parameters by which general and specific jurisdiction are dispositive." *Id*. at 6.

In opposition, Defendant maintains that *Wayfair* is inapposite to Plaintiff's motion because personal jurisdiction was not at issue in that case, nor did the Supreme Court purport to overrule the due process limits of personal jurisdiction. Opp'n at 2. In reply, Plaintiff agrees that *Wayfair* did not overrule the due process limits on personal jurisdiction, but contends that *Wayfair* altered the definition of "physical presence" and "changed the relationship between the forum state and [ICSPs] such that it was no longer necessary for the ICSP to have a physical presence in the forum state to

satisfy the constitutional guarantees of due process at least for the purpose of imposing sales tax collection liabilities on ICSPs such as Defendant." Plaintiff asks this court to "use the same legal definition of 'physical presence'" in this case as used in *Wayfair*–"[t]o wit in the case of an ICSP 'physical presence' is established when the business conducts a large number of transactions within the State over common carrier facilities[.]" Reply at 1-3. According to Plaintiff, Facebook's business relies upon "transactions over interstate common carrier facilities with personal computers where software created and placed by Defendant resides." *Id*. at 3.

### *4. Analysis*

Plaintiff's reliance on *Wayfair* as the basis for reconsideration is misplaced and his arguments are flawed. The online retail merchant defendants in *Wayfair* sell and ship merchandise to consumers in South Dakota by common carrier through interstate commerce, thus creating a "substantial nexus" with the State and triggering sales tax liability. While an individual may need a computer to access Facebook, Defendant does not sell and ship computers to Ohio residents.

Plaintiff contends this court should adopt for its personal jurisdiction analysis the "altered" physical presence definition used by the Supreme Court in *Wayfair*. But the Supreme Court in *Wayfair* did not alter the definition of "physical presence" for the purpose of imposing sales tax liability under the Commerce Clause, it overruled *Quill*, holding that a physical presence in the taxing state is "not necessary" to create a substantial nexus with an out-of-state seller to the taxing state. *Wayfair*, 138 S. Ct. at 2092, 20099 (citing *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)). The Supreme Court had already eliminated the "physical presence" requirement for

the Due Process component of sales tax liability in *Quill*,[3] and *Wayfair* did not change that.

The issue before the Supreme Court in *Wayfair* was not personal jurisdiction and the Due Process Clause, but tax liability and the Commerce Clause. Plaintiff admits that *Wayfair* did not purport to overrule the settled due process limits on the exercise of personal jurisdiction. Reply at 1. Physical presence is not required for the court to find sufficient minimum contacts under a personal jurisdiction due process analysis. This court's decision to grant Defendant's motion to dismiss for lack of personal jurisdiction was not grounded upon a lack of physical presence in Ohio, but a lack of "minimum contacts" sufficient to satisfy due process requirements. *See Georgalis*, 324 F. Supp. 3d at 958–61 (citations omitted).

---

[3] A brief summary of prior Supreme Court rulings on out-of-state sellers' sales tax liability is useful. The issue of applying state taxing statutes to out-of-state sellers requires an analysis of both the Due Process Clause and the Commerce Clause. Although closely related, the two clauses "pose distinct limits on the taxing powers of the States." *Quill*, at 504 U.S. at 305-06 (There may be more than sufficient factual connections between the transaction and taxing state to sustain the tax as against due process, yet the tax may fail because of its burdening effect upon commerce.) (citation omitted). In addition to being analytically distinct, Congress may regulate commerce among the States but does not have the power to authorize violations of the Due Process Clause. *Id*.

In *Bellas Hess*, the Supreme Court required some sort of physical presence by an out-of-state seller in the taxing state in order to impose sales tax liability under both the Due Process and Commerce clauses. *See Quill*, 504 U.S. at 306-07. In *Quill*, the Supreme Court separately analyzed the "physical presence" requirement in the taxing state under both the Due Process Clause and the Commerce Clause. After considering the evolution of due process jurisprudence, particularly in the area of judicial jurisdiction, the *Quill* Court overruled *Bella Hess* "to the extent that our decisions have indicated that the Due Process clause requires physical presence in a State for the imposition of duty to collect a use tax, we overrule those holdings as superseded by developments in the law of due process." *Quill*, 504 U.S. at 308.

In a separate analysis of the Commerce Clause, the *Quill* Court declined to overrule the "physical presence" requirement for that prong of the tax liability analysis. *Wayfair*, 138 S. Ct. at 2091-92 (In *Quill*, the Court overruled the holding in *Bellas Hess* that due process required an out-of-state vendor to have a physical presence in the State, but not the Commerce Clause holding requiring a physical presence.) *Wayfair* focused on the "physical presence" requirement as to the Commerce Clause, and the Supreme Court overruled *Quill* on that issue. *See Wayfair*, 138 S. Ct. at 2093 (An out-of-state seller's physical presence is not necessary for the seller to have a substantial nexus with the State, which the Commerce Clause requires in order for the State to impose sales tax liability on the seller.).

*Wayfair* did not address or change the law concerning Due Process analysis for personal jurisdiction, and does not constitute a change in intervening law that supports Plaintiff's motion for reconsideration. To the extent that Plaintiff's Motion revisits arguments made when briefing Defendant's motion to dismiss, or raises arguments that could have been raised prior to the entry of judgment, such arguments do not constitute a permissible use of a Rule 59(e) motion and will not be considered by the court. *See Exxon Shipping*, 554 U.S. at 486 n.5.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Reconsideration (ECF No. 15) is denied.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

November 16, 2018